The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Bost. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. It is stipulated that all parties are properly before the Commission; that the Commission has jurisdiction over the parties and subject matter, and they are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Defendant is a duly qualified self-insured.
3. Plaintiff was employed by the employer-defendant on October 9, 1998, the date of the alleged injury.
4. Plaintiff's average weekly wage at the time was $368.40, yielding a compensation rate of $245.61 per week.
5. Plaintiff is claiming temporary total benefits for the period from 9 December 1998 through 15 August 1999.
6. Defendant paid compensation benefits without prejudice from 9 December 1998 through February 23, 1999, at which time the claim was denied.
7. Defendant paid employer funded short-term wage replacement disability benefits to plaintiff from 24 February 1999 through 9 July 2000 in the gross amount of $5,437.15.
8. Plaintiff returned to work for the defendant from 15 August 1999 through 7 July 2000. Plaintiff went to work for the Town of Cofield on 11 July 2000.
9. The deposition of Dr. Ira M. Hardy, II is a part of the evidentiary record in this case.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. On 30 June 1993 plaintiff sustained an injury to his cervical spine while working for Newport News Ship Building.
2. As a result of his injury sustained in the course of his employment with Newport News Shipbuilding, plaintiff underwent a laminectomy and spinal fusion of the C5 and C6 vertebrae in 1993.
3. Since the laminectomy and spinal fusion that was performed in 1993, plaintiff has had chronic neck pain that has continued.
4. Plaintiff was employed by defendant-employer, Georgia Pacific Chip and Saw Mill as a "Stick Box Operator." His job duties were to essentially monitor machinery producing cut lumber and ensuring that the machine performed properly. Plaintiff was also required to remove defective pieces of lumber as they came from the machine after processing. In addition to this duty, plaintiff was sometimes required to clear sawdust and wood chips from around a machine known as a "hog."
5. On Friday, 9 October 1998, plaintiff was shoveling wood chips from the bottom of a trench housing the wood grinder. Plaintiff was shoveling the chips over his head to get them out of the trench which had a depth of nine to ten feet. Plaintiff alleges on this date he felt a pop in his neck and a sharp pain run down his right arm and shoulder.
6. Plaintiff sought medical treatment from Dr. Howington, his family practitioner, on 9 October 1998. He was subsequently referred by Dr. Howington to Dr. Ira M. Hardy, neurosurgeon. On 9 November 1998, plaintiff visited Dr. Hardy for the first time. On this visit, a complete history was done on plaintiff in which there was no mention of the alleged 1998 injury.
7. Dr. Hardy's initial medical exam revealed plaintiff was suffering significant neck and right arm pain. Dr. Hardy's first impression was a cervical disk problem with a lower right cervical radiculitis. Dr. Hardy recommended plaintiff undergo a cervical myelogram and post myelogram CT to determine the extent of root damage. Dr. Hardy found that the contrast CT Scan confirmed a mid-line and paracentral right C6-C7 extruded disk. The extruded disk not only deformed plaintiff's spinal cord, but also obliterated the foramen or canal where the nerve exits the spine.
8. On 7 December 1998 Eastern Radiology performed a myelogroam and also did a complete history on plaintiff. The myelogram performed on this date revealed a ruptured disk at the C-6, C-7 level. At this time, plaintiff continued to deny any injury in October of 1998 at Georgia-Pacific Chip and Saw Mill.
9. Plaintiff returned to see Dr. Hardy on 9 December 1998 to discuss the findings of the recent myelogram. At that time, plaintiff continued to deny to Dr. Hardy any injury to his neck other than that sustained at Newport News Ship Building in 1993. Dr. Hardy proposed surgery in the form of another spinal fusion to alleviate his chronic neck and recurrent arm pain during this visit. Plaintiff did not elect to have the surgery at that time and informed Dr. Hardy that he would give the matter some consideration and report back to him.
10. On 9 December 1998, plaintiff reported the alleged injury of 9 October 1998 to the plant's superintendent Dean Johnson. Dean Johnson requested Arthur Johnson to follow up on the report to him and fill out an incident report. Plaintiff filed a Form 18 with the Industrial Commission on 18 December 1998.
11. On 24 March 1999, plaintiff returned to Dr. Hardy where he again proposed a spinal fusion at the C-6, C-7 level. Again, on this date, plaintiff made no mention to Dr. Hardy of any accident in October of 1998 at Georgia Pacific.
12. Plaintiff agreed to the surgery and returned to see Dr. Hardy on 10 June 1999 for a pre-surgery admission history and physical. Again, on this date, plaintiff made no mention to Dr. Hardy of any accident in October of 1998 at Georgia Pacific.
13. On 17 June 1999, Dr. Hardy performed a fusion of the C-6 and C-7 vertebrae.
14. In a letter dated 19 July 1999, Dr. Hardy informed plaintiff's attorney, Ms. O'Malley, that plaintiff had listed the date of his injury as 30 July 1993, the date of his injury at Newport News Ship Building.
15. After this letter, plaintiff made his first statement to Dr. Hardy about the alleged October 1998 injury. An addendum to plaintiff's 27 July 1999 follow-up visit to Dr. Hardy is the first time that plaintiff mentions any other injury to his neck other than the one that occurred in 1993 at Newport News Ship Building.
 ***********
Based upon the Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. In passing upon issues of fact, the Commission is the sole judge of the credibility of witnesses and of the weight to be given their testimony. It may accept or reject the testimony of a witness, either in whole or in part, depending solely upon whether it believes or disbelieves the same. Anderson v. Northwestern Motor Company,233 N.C. 372, 64 S.E.2d 265 (1951).
2. Plaintiff has failed to provide credible evidence that he suffered an injury by accident or a specific traumatic incident while in the employ of the defendant. Plaintiff has not offered any credible evidence that he suffered a new or aggravating injury while working for Georgia-Pacific. Plaintiff's condition is not causally related to any incident of his employment. Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
This the ___ day of October 2001.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER